## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 20 2017, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Armex Brown,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 20, 2017<br><br>Court of Appeals Case No.<br>49A04-1610-CR-2416<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>Trial Court Cause No.<br>49G04-1602-F3-7066 |

**Altice, Judge.**

### Case Summary

[1] Armex Brown appeals following his convictions for two counts of child molesting, one as a Level 3 felony and one as Level 4 felony. He raises two issues on appeal, which we restate as follows:

> 1. Did statements made by the prosecution during closing argument constitute prosecutorial misconduct rising to the level of fundamental error?

> 2. Do Brown's convictions violate Indiana's double jeopardy prohibition?

[2] We affirm.

## Facts & Procedural History

[3] In February 2016, Brown was living with his girlfriend, Ashley Mahaffey, and her children, including five-year-old M.M. While Mahaffey was at a medical appointment one morning, Brown gave M.M. a shower and rubbed lotion on her body, including her "private parts and bottom." *Transcript Vol. 2* at 165. Brown then took M.M. into his bedroom, where he inserted his finger into her vagina and her anus.

[4] When Mahaffey returned, she saw that M.M. had changed from her pajamas into regular clothes, which Mahaffey found odd. When Mahaffey spoke to M.M., M.M. made a disclosure. Mahaffey then confronted Brown about what M.M. had said, and Brown admitted that he had given M.M. a shower and rubbed lotion on her body, but denied any inappropriate touching. Mahaffey told Brown to leave the residence, but he returned that evening and refused to

leave.  The police were called and Brown was taken into custody.  After Brown's fingers were swabbed for DNA, he stated that he might have inadvertently touched M.M.'s vagina and buttocks while rubbing lotion on her.

Brown was charged with one count of Level 3 felony child molesting and one count of Level 4 felony child molesting.  A two-day jury trial commenced on August 22, 2016, at the conclusion of which Brown was found guilty as charged.  Brown received an aggregate sentence of eleven years, with eight years executed and three years suspended to probation.  Brown now appeals.

## Discussion & Decision

### 1. Fundamental Error

Brown first argues that the State's comments in closing argument amounted to prosecutorial misconduct.  Conceding that he failed to properly preserve this issue, Brown argues that the prosecuting attorney's allegedly improper statements resulted in fundamental error.

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. . . . To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial.

Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, waived for failure to preserve the claim of error. The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." . . . Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error.

*Ryan v. State*, 9 N.E.3d 663, 667-69 (Ind. 2014) (citations, footnotes, and emphasis omitted).

[7] On appeal, Brown takes issue with the following statements of the prosecuting attorney during closing argument:

Let's talk about M.M.'s consistency. Her account of events never changed over the course of six months. At least seven different times she had to talk about this, at least seven. She told her mommy. She told her Aunt Daphne. She told Officer Daggy. She told Jill Carr. She told the nurse and she told you. There were not any inconsistencies. There were distinctions, no differences.

*Transcript Vol. 2* at 200. Brown argues that the prosecuting attorney's statements in this regard mischaracterized the evidence because, with the exception of the forensic nurse examiner, none of the witnesses referenced testified as to what M.M. had told them. Thus, according to Brown, there was no evidentiary basis for the claim that M.M. gave a consistent account of the molestation to multiple people. Brown argues further that by stating that M.M. gave the same account seven times, but listing only six instances in which M.M. discussed the matter, the prosecutor alluded to personal knowledge of matters not in evidence. The State responds that the jury would not have understood the prosecutor's statements to suggest personal knowledge, and the references to M.M.'s consistency were based on reasonable inferences from the evidence and were appropriate comments on the absence of evidence to support Brown's claim that M.M. had been coached.

[8] We need not resolve this issue because even if we assume the statements were improper, Brown has not established fundamental error. The jury received preliminary and final instructions accurately stating the law, and these instructions reminded the jury that the arguments of counsel should not be considered evidence and that the jury should base its decision on the evidence admitted at trial. In light of these instructions, we cannot conclude that the prosecutor's brief references to statements M.M. allegedly made to other witnesses rose to the level of fundamental error. *See Ryan*, 9 N.E.3d at 672-73 (finding no fundamental error resulting from prosecutorial misconduct where jury was properly instructed that arguments of counsel were not evidence).

## 2. Double Jeopardy

Brown also argues that his convictions violate Indiana's double jeopardy prohibition. The double jeopardy clause found in Article 1, section 14 of the Indiana Constitution "was intended to prevent the state from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Two or more offenses are the "same criminal transgression" for the purposes of the Indiana double jeopardy clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.*

Brown challenges his convictions under the actual-evidence test, which "prohibits multiple convictions if there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002) (quoting *Richardson v. State*, 717 N.E.2d at 53). Establishing a "'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). Instead, the existence of a reasonable possibility "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* In applying this test, we seek "to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury

instructions, argument of counsel, and other factors that may have guided the jury's determination." *Wright v. State*, 950 N.E.2d 365, 369 (Ind. Ct. App. 2011).

[3] Brown does not dispute that there is evidence in the record to support two separate child molesting convictions—specifically, there was evidence that he inserted his finger into both M.M.'s vagina and her anus. Brown argues, however, that the charging information did not specify which act supported which count and that the prosecuting attorney's closing argument invited the jury to rely on exactly the same evidence to support both convictions. He directs our attention to the prosecuting attorney's statement that the "second count is mostly the same stuff just said in a slightly different way. The only difference here between those counts is intent." *Transcript Vol. 2* at 199.

[4] It is clear to us that the prosecuting attorney was referring in this statement to the statutory elements of the charged crimes, not the evidence presented to support a finding of guilt. When referring to the evidence, the prosecuting attorney consistently indicated that there were two separate acts. *See, e.g.*, *id.* at 223 ("This happened twice. Finger inside her vagina, fingers at her—her anus. That was clear."). Accordingly, Brown has not established a reasonable possibility that the jury relied on exactly the same facts to support both convictions.

[5] Judgment affirmed.

Kirsch, J. and Mathias, J., concur.